Thank you. Will the clerk please call the next case? 322-0201, Deanna Reeves, appailed by Bradley Costgrove v. Advocate Health & Hospitals Corp. amended by Robert Lawson. Counsel, you may proceed. May I please report, Justices? Counsel? Your Honors? Your Honor? As it relates to our trial, the jury made certain findings after a long, hard-fought battle by both sides. The jury was charged with the jury instructions in our case with making certain findings of which we at the plaintiff had the burden of proof. In the case specifically, there were two issues or two counts of conduct at issue, all aimed at Dr. J. There were no independent acts of negligence alleged against Advocate. Advocate's entire conduct in our case was all what's called derivative liability, that being that they're vicariously liable for the conduct of their agent if the jury was to find that Advocate held out their agent as one of their own. So there's two counts in our trial. There's two counts in the complaint as were alleged against Dr. J. The first and most important count is something called informed consent. The informed consent count had its own instruction, had its own separate issue of instructions. That was on page 5692 of our common law record, 5692. And the plaintiff had four things that had to be proved. And we know by the finding on a general verdict against Dr. J that the plaintiff is presumed to have proven all four of the elements of the informed consent count. One, failed to inform the risks and alternatives of not treating or monitoring for glioma. Glioma's a brain tumor, and I'm sure everyone saw in the brief. If I say brain tumor, glioma, I'm talking about the same medical issue. Two, if disclosed the risks and alternatives, a person wouldn't delay in treating such a glioma. Three, that there was proximate cause. And four, that there was an injury. We have a general verdict, a signature by the jurors in our case, that tells us without any question that the plaintiff had the burden, the jury heard the issue, and found against Dr. J on the conduct of informed consent. Counsel made arguments in their brief about informed consent respectfully. I had disagreements with those as it relates to what Dr. J testified to. Never was there any testimony that Dr. J complied with her obligation to provide informed consent. In fact, if you look at the defendant response brief, they talk about the issues instruction, which is on 5687, which is professional negligence. There's a medical malpractice count, and then there's an informed consent count. Two counts, two different charges, both went to the jury. The jury found in favor of the plaintiff against J. Page 5687 is the instruction page that has the Med Neg count. Med Neg count had allegations A through G. Counsel for the defense cites in their response brief an article from the Med Neg instruction when it has nothing to do with informed consent. Nothing at all. They're independent, stand-alone actions of negligence. There is no plausible way to argue that the informed consent misconduct in our case did not begin in 2009, and how do we know that? The defendants could not and did not offer any expert testimony that there was a compliance with the standard of care as it relates to the informed consent count. That it didn't happen. The jury found in the favor on the informed consent count, but also found in favor of the plaintiff on the medical negligence count on allegations A through G. We also know when the jury found in favor of the plaintiff on the general negligence count that the plaintiff has also proved causation on all allegations in issues instruction 5687 and on 5692. Those were proven beyond what the burden of proof was in the case, and therefore substantial damages were awarded to the plaintiff in the amount of $3.3 million, which was no surprise to anybody because Ms. Riz is profoundly disabled and requires 24-hour attendant care to make sure that she has funds available to take care of her for the rest of her life. Mr. Picasso, if I can interrupt for a second. She's saying that there was no evidence presented on the informed consent count that would suggest that the jury could have found that in 2009 there was no negligence, excuse me, no violation of the requirement of informed consent. Excellent. So it's super important to separate those two out because what counsel tried to do is lump them together and say negligence. When informed consent is not negligence, it's a whole separate stand-alone cause of action. And if you look, and I'm going to read this if the court will. If I can just put a point on my question. Are you saying that the jury was wrong if they concluded that? We don't know what they concluded because it was a general verdict, but are you suggesting if they reached that conclusion that informed consent was not an issue in 2009 that they would have been wrong, the jury? What I'm saying is that informed consent was an allegation from 2009 to 2014. It was an occurrence, and that occurrence is defined by our Supreme Court in two cases, Cunningham and also in Feldmeier. Cunningham was in the context of gynecologic care for an IUD, and in Feldmeier was in the context of a continuing course of negligent conduct as it relates to domestic abuse. There was also a case that we cited, a case of Jones, that was in reference to a tumor case as well. So there is ample evidence. In fact, there is no evidence to the contrary that informed consent didn't take place in 2009 all the way to 2014. It was a continuous course of negligent conduct that went from 2009 to 2014. So there is no evidence by the defense that informed consent was met. What counsel cited to is that Dr. Jang's self-serving trial testimony. They didn't have an expert witness. It's not often you'll see a med-neg case where the defense does not have a student. The doctor was an expert witness, though. Excuse me? The doctor was an expert witness. Well, she had expertise. Was she qualified as an expert witness? Yes, she was. So she was an expert witness. She was, yes. I guess the best way to put it is she was not a retained expert witness. She was not a retained expert witness. They had retained expert witnesses that testified. In fact, they had retained expert witnesses that were part of the offer of proof that agreed with our side of the story. But because the defense didn't ask questions on the scope issue, the trial court prevented us from listening from their own experts that they believed Dr. Jang violated the standard of care. Which is no real mystery here because in 2009 to 2014, there is no evidence that she actually did comply with her duty to provide informed consent. At very best, the defense argues that Dr. Jang told Ms. Risk that she had an abnormality on a tumor. That does not comply with what's required on the instructions that we know the jury found. Can I go back to just one thing that Your Honor brought up? And you said we don't know how the jury found? We do know how the jury found because the law tells us that there's a presumption, and that presumption is in favor of the person that has the burden of proof. So as it relates to the burden of proof here, on the informed consent count, the presumption based on the general verdict is that the plaintiff proved all counts, meaning MEDNAG, and informed consent. And there's a presumption that all counts were proved with causation as well. That's what the law says, and the counsel for defense has agreed that the evidence is clear, and the law is clear, that the prevailing party has the presumption that the jury found in our favor on the issues that were before them. I think the defense takes issue as to whether or not they believe they were the prevailing party, and that really is the issue that I want to address next. One more question. I apologize. After the jury went to deliberations, the transcript ends. I saw that, and I looked at it last night. More things happened. I didn't see a transcript of anything after closing arguments up until the time of the verdict. In the time period where the juror questions were coming out, that clearly showed they were confused. I don't have an answer to you for why that is. You've tried the case? I did, sir. Was your recollection that you were on the record? My recollection is every juror question that came out, that was handled in the courtroom of the juror of DuPage County. Can I just set the scene for one second? Sure. This was COVID. This was the first trial that came out after COVID. They built this brand-new courtroom. In fact, I think this might be one of the most beautiful courtrooms I've ever had a chance to try a case in or argue a case in. This happens to be about the same size as the trial room we did because it was a post-COVID trial room. We literally had jurors spread all the way down throughout the whole room, and it was set up technologically. We had a few snafus. I don't know why it wasn't on the record. It's something that I addressed. I brought up to my colleagues because my recollection is when the third question was brought out that said, can we answer, I pulled it out, can we mark yes for a special interrogatory but no for advocate's verdict form A, I said no. My recollection is that I said no to this. I don't have a transcript to go further on it, but that was an issue that I saw as well. Thank you. I don't want to throw you off anymore. No problem. As it relates to the topic of who is the prevailing party, the prevailing party relates only to the issue of who had the burden of proof and what did they find in that regard. The prevailing party is, in this instance for medical negligence and informed consent, who had the burden of proof plaintiff, what did the jury find? The jury found that we proved those issues. How do we know that from a general verdict? As it relates to advocate, the sole issue against advocate was whether or not Dr. Zhang was its apparent agent. Was Dr. Zhang its apparent agent at the time it occurred? So what happened here? Counsel brings an argument on behalf of its client indicating that they want a special interrogatory that I objected to. They wanted not one, they wanted two. Had they asked for a special interrogatory that said, was Dr. Zhang the apparent agent of advocate at the time of the occurrence, that would have been a problem. That would have been a problem. Why don't we put boundaries about occurrence? What do you mean by that? The occurrence, when you ask me what do I mean by it, I use the definition espoused by the Illinois Supreme Court in the case of Cunningham. That's cited in our brief, and specifically I can quote it to you, but an occurrence is an occurrence in this case is a continuing course of negligent conduct that happened in 2009 and it went until 2014. There's an example in Cunningham that talks about the absurd results that can come when you try to separate out a continuing course of negligent conduct, and I think that's vital to your decision in this case. I think that's the fundamental aspect. Of course the hospital here wanted to try to divide up a continuous course of that you can't prove causation or something about causation. So you're saying the continuous course of negligent conduct was the treatment of your client over this period of time? It was multiple different things, but we have to separate that into two different aspects. If I could ask the court to always keep in mind informed consent on this bucket, medical negligence here. I think we understand that. Oh, of course. Go ahead. As it relates to informed consent, as it relates to informed consent, Dr. Zhang sees the patient in the hospital in 2009. From 2009 all the way to 2014, she continues to see the patient, and the obligation is to inform the patient. It is a question of what capacity she continues to see the patient. There is two ways that you have to look at this, and it's vital to understanding the concept. What we talk about in agency is not the occurrence. It's not the conduct. The conduct continues from point A to point B. The corporate responsibility for the misconduct during the occurrence is a whole different story, and that's the way that the jury got confused. They did not understand when this special interrogatory got split into two different time frames, they have now a superficial occurrence. The jury looked at it, and they said a question to us. What is an occurrence? They didn't get an answer to that. What is an occurrence? You have 2009 to 2014. The jury now thinks that there's two separate occurrences, and then when they think it's two separate occurrences, they send out a question for us. What if we find in favor of the plaintiff on an apparent agency in 2009, but not in 2010 to 2014? And then when you look at our instructions, at the 10510 instruction, the 10510 instruction tells you the date of the occurrence. Then the jury goes back to the question, when is the date of the occurrence? The special interrogatory did exactly what we changed the statute to fix. 2020, the statute got changed so that special interrogatories don't weaponize people, so that people in my client's position and in an advocate's position don't get harmed by these inconsistent verdicts. We have an inconsistent verdict here. It can't be argued that it's not. You have conduct that occurs for as long as it does, and that during a part of it, the advocate is responsible in 2009. It's kind of that saying, if you're in for a penny, you're in for a pound. This is one of those situations that in 2009, when an advocate is found to be the apparent principal of the apparent agent, Dr. Zhang, they then have a situation where they have to look at it and say, okay, now what do we do? If we find advocate responsible in 2009 but not in 2010-2014, what do you do? They go back to the instructions, and they didn't know what to do, and that's why they sent out the note to the judge, and you get a situation where they're confused. What happens when you have an inconsistent special interrogatory and a general verdict? Five years ago, if I tried the same case, which I've had these issues forever since I've been trying these cases, what do you do? The special interrogatory would have controlled. Before the statute would have changed, I would have been here, and I still am here, asking that you, as justices in this case, enter a verdict in favor of the plaintiff on the special interrogatory against advocate. But since the law has changed, now the remedy is not making advocate pay necessarily for the verdict, although I would ask you to do that and to follow the case law. The change in statute now asks or suggests that your honors enter an order permitting a new trial on this issue alone so that the plaintiff isn't harmed by an inconsistency, nor is the hospital harmed by this inconsistency, so that we essentially go back to the beginning and have a jury trial on the same issue that's clearly as confused as could be. There's never been a case like this before where somebody took an occurrence, split it in half, and asked the jury to make a decision. Never. If I found one, I would have showed you. So now we're asking you for a new trial, hopefully, on that issue. No, only on the issue of apparent agency. There's already a finding of negligence and a money value. The only issue that is pending still is against the advocate. Is the advocate the apparent principal of Jane at the time of the occurrence? That's a short jury trial on this only issue that the issue is clouded by the answer to the special interrogatory. Your time is up. You will have time to reply. I appreciate it. Thank you, Your Honor. Thank you, Your Honor. Thank you. Mr. Larson, you may respond. Thank you. Justices, counsel, may it please the court. What we heard today was a doubling down of the same argument that plaintiff's counsel made at trial and was rejected in the same argument that was made post-trial. Plaintiff's counsel can only possibly get relief here if this court chooses to stand on its head decades of jurisprudence that suggests the non-moving party, the prevailing party, has all the presumptions in their favor. Plaintiff wants to argue that, well, but I was the prevailing party as to somebody else, so I should get to be considered the prevailing party as to advocate. And therefore, I'm entitled to all of these presumptions because I prevailed against Dr. Jane. You can look around in the room. Dr. Jane is not here. This is not Dr. Jane's appeal. Dr. Jane has an appeal, not before this court. And when plaintiff argues that they are entitled to the presumption that they proved every aspect of their case, in response to Dr. Jane's appeal, plaintiff's counsel will be absolutely correct. Plaintiff's counsel is not correct when it comes to advocate. And as you heard, the entire basis of plaintiff's argument that the jury found this and found that is based upon the presumption that if they're entitled to every presumption in their favor, as they asked for over and over and over again, that that means they proved everything. The jury did not answer a special interrogatory or otherwise make a specific finding that plaintiff proved, for instance, lack of informed consent. One of the issues the jury may have determined was simply that when the patient came back in January of 2010 and saw Dr. Jane in her private office, when she should have known that this doctor was not an apparent agent of the hospital, and they went over the first follow-up CT scan that had been done at the end of 2009, that's when Dr. Jane erred. She didn't order another follow-up study, she didn't schedule her for a follow-up study, and she didn't recommend a follow-up study. The jury could very reasonably have found that. I would ask the court to consider this analogy, to consider the implications of what plaintiff's counsel is asking this court to do. Set aside the apparent agency issue and assume for a moment that the allegation was that Dr. Jane was actually an employee of the hospital in 2009 and quit and left the staff of the hospital at the end of 2009. So there was agency, clear agency in 2009, and clearly no agency thereafter. Based upon plaintiff's arguments, no jury could ever properly conclude that they find against Dr. Jane and in favor of Advocate, because once they decide against Dr. Jane, they could decide every issue 2009, 2010 thereafter, and so Advocate's bound by that even when they're no longer their agents. That's the implication of what plaintiff is asking them to do. The reason plaintiff has the burden, there's a reason why plaintiff goes first here. There's a reason why plaintiff has to present their arguments first here. They have the burden of proving to this court that the jury decided incorrectly. They don't get to just have presumptions to do that. They have to prove that. They have to establish based upon the record. Now, we've talked about lack of informed consent, and counsel referred to Dr. Jane's self-serving statements. Whether they are self-serving or not, the burden on the party responding to an appeal is small. We just have to show some evidence, and we did show some evidence. The doctor, as your Honor, Justice, have indicated, the doctor is an expert, and she testified. She complied with the standard of care. She testified that based upon her custom and practice, she did have an informed consent discussion with the patient, and as a matter of fact, DeJohnna Riz also testified that they had that conversation, that they discussed the next steps, and they followed up on those next steps. She got a follow-up CT scan at the end of 2009, and she went to Dr. Jang's private office in January of 2010, and unfortunately, sometime thereafter, in the 18 visits, 18 visits DeJohnna Riz had with Dr. Jang from 2010 to 2014, being all in her private office, something got missed. That was a perfectly reasonable, logical, fair decision by the jury to say, that's where I think, you know what, it was okay for the doctor to follow up that way she did initially, but somewhere along the line thereafter, when she was just seeing the patient as a private patient in her own office, that's when she dropped the ball. That's not an irrational decision at all. Plaintiff asks, as the losing party, as the advocate, as the moving party, that they be entitled to these inferences. Even, counsel even said today, the party that has the burden of proof is entitled to all those inferences. There's no case that says that. The cases say exactly the opposite. The party that has the burden of proof is the one that has to prove things. They don't get those just accepted by presumption. The case law, and this is case law cited in Plaintiff's own brief, says, a trial court must examine the evidence of the prevailing party, standing alone, to determine whether there is some evidence to support a verdict. The existence of disputed or contrary evidence is immaterial. That's out of plaintiff's brief. And yet, over and over again, we hear, well, you should just presume we proved everything, because the jury signed a verdict without any evidentiary findings, as did Dr. Jang. Plaintiff's counsel talks about the special interrogatory. Certainly, plaintiff could have asked the jury, as a special interrogatory, did Dr. Jang fail to properly provide informed consent to the degenerates? They didn't ask that the jury find that. So we don't know, as you pointed out, we don't know specifically what the jury found. And no, we cannot simply presume that, based upon the law that has existed in Illinois for decades. We believe the jury determined, and the record reflects it, the jury quite reasonably determined that Dr. Jang was the apparent agent in 2009. Dr. Jang was brought in at the request of another physician when she was in the hospital. And at that time, Dr. Jang spoke with the patient, talked about the evidence of what she discussed with the patient, and she put a plan of care together. There's conflicting evidence as to whether that plan was appropriate or not, but certainly there is not definitive evidence to say that it was not. And there was a follow-up plan. The jury could then very clearly and rationally have decided that in 2010, when she's seeing the patient in a different office, in a different town, the evidence reflects a trial, extensive cross-examination of Ms. Riz where she was shown consent forms that indicated to her that Dr. Jang was an independent contractor at that time. And it was during that time frame that Dr. Jang dropped the ball. Interestingly, by the way, Plaintiffs' Counsel has not argued in their brief that the jury erred in finding that Dr. Jang was not the apparent agent of advocate from 2010 to 2014. There is no argument that that decision, that answer to the special interrogatory, the second special interrogatory by the jury, was erroneous. So that's a perfectly appropriate decision. The only issue is whether this court has to presume that every single allegation was proven. Now there was even a discussion, if there's any question as to whether that thought process of the jury was rational or not, with the judge when the issue of these special interrogatories was brought up. The court, the trial court, asked this question. Suppose the jury, in this case, decides that Dr. Jang was negligent starting in 2010. Counsel, do you have a say for that? That's Supplement 2 of the record, page 64, continuing to page 65. C, you don't have that say. It was a supplementation of the record, Your Honor. It was the purported proceedings because it was a supplementation. And Mr. Cosgrove answered, OK, I'm with you. Court follows up. And that she was not an apparent agent of advocate, which is a possibility here. You have to consider that. And counsel's response was, then they should check no to advocate and yes to Dr. Jang, exactly as they did here. Now the court went on to note, I'm concerned about this jury finding factually that from the moment that she set foot in Zhang's office, that Zhang was no longer the agent of the hospital. And they could find that, you guys could argue with me if you want and say it's not possible, but there is evidence out there. So the court was considering this very possibility in discussing these issues, that the evidence could come down this way based upon the evidence the court was hearing. And plaintiff's counsel was not jumping up and down at that point saying, well, wait a minute, there's no possible way the jury could conclude that. Because counsel knew that the evidence actually supports that. Now, you can look through the entirety of this record. Counsel hasn't cited otherwise. There is no finding by this jury that Dr. Jang failed to properly inform Mrs. Riz of the consequences of the procedures that she received. There is no finding along those lines. The only way plaintiff's counsel tries to get you there is to ask you to presume that, based upon the general verdict in favor of plaintiff against Dr. Jang. They are not entitled to that inference as to advocate. And for the reasons I've already stated, it would be very bad public policy, and against decades of precedent, to suddenly switch that burden and say, a defendant who prevails at trial is going to lose because the jury presumes things as to another defendant. It's also important to consider the instruction. And this was plaintiff's instruction, not the defendant's instruction. But the plaintiff's instruction. And the plaintiff's instruction on burden of proof on this issue was stated in the disjunctive and or. And it reads as follows. The plaintiff claims that she was injured and sustained damage, and that defendant Lee Jang MD was professionally negligent in one or more of the following respects. A, did not suspect that the patient had a glioma, and or. B, did not refer the patient to a neurosurgeon, and or. C, did not perform follow-up MRI after January 2010, and or. Inform the patient what the abnormality was, scar tissue. And or inform the patient she did not have a tumor. And or did not inform the patient of the consequences of not obtaining the follow-up MRI. What would F refer to? We know she had a follow-up MRI in December after the hospitalization. It's the failure to inform her in 2010 that A, she should get another MRI, and B, if she doesn't hear the problems, that's what that refers to. And so the jury logically looked at that and said, well, we had a pretty good plan going through the end of 2009. But going into 2010, somewhere this got dropped. They had a conversation, they reviewed the 2009 December MRI, and there should have been something more. There's nothing irrational about that conclusion. And I've studied case law that talks about the circumstances under which there's a disjunctive verdict, and you cannot assume in those circumstances of and or that everything was proven, especially as to a party that wasn't the party against whom those findings were made. The plaintiff wants to ask this court to change the words in various cases that both defense and plaintiff have cited, from prevailing party to party that had burden of proof, or prevailing plaintiff, or those sorts of things. There is no dispute. There can be no dispute in this case. But as we stand here before this court, the prevailing party is advocate. It is indisputed and indisputable. Advocate got a general verdict at trial. Now, plaintiff's counsel asked about the supposed confusion of the jurors based upon the questions they presented. And Your Honor, asked a very valid question was, the burden is on the plaintiff to present this court with a record that would establish something more than what was there. All we really have is the questions themselves. Mr. Levinson, did you try the case? I did not try the case, Your Honor. So you don't have a recollection as to whether the court reporter was present? I don't. My trial counsel is here, but obviously we can't probably have him testify at this point. Probably not. But I do want to address the questions really don't demonstrate any confusion by the jury. The first was, what is the time of the occurrence? Not what is an occurrence, as plaintiff's counsel suggested earlier this morning. That's not the question they asked. What is the time of the occurrence? They clearly didn't buy into the notion that this was one continuous course. They didn't buy that. And the agency instruction, again, submitted by plaintiff's counsel, if you find that defendant Lee Zang MD is liable, but that she was not the apparent agent of defendant Abbott Health and Hospitals Corporation at the time of the occurrence, then your verdict is for Abbott again. The jury just didn't buy the continuous course argument. The second question was, can you define apparent agency? Well, there's an instruction on that. If counsel didn't properly explain to the jury the issue of apparent agency, although that's not really an argument in the case, plaintiff's counsel had the ability to argue it at trial. But the one that's really striking is the third one. Can we mark yes for A, special interrogatory, but no for advocate on verdict form A? There can be no clearer expression of the jury's intent to do exactly what they did here. They felt there was a period of time where Dr. Zhang was advocate's apparent agent. But they didn't feel an advocate was liable here, because during the time they felt there was negligence, Dr. Zhang was no longer advocate's agent. They made that very clear in their own special interrogatory. And I would just finish by noting that there are some issues that we believe plaintiff has waived. They did not argue about special interrogatory errors. They didn't argue error that Dr. Zhang was not the apparent agent. And most importantly, they waived the issue which was the central one presented for review, which was whether the trial court, and we didn't really hear that today, whether the trial court violated 211-08. We know they didn't ask the court to instruct the jury to continue deliberating. And how do we know that? That the jury was not asked, because the record reveals that they did not ask. And, in fact, even in their brief counsel acknowledges they did not. I think you both agree to that, but there's no transcript of that. So where in the record does it appear that they didn't ask, they took the verdict as it was and made a post-trial motion later? There's not a written transcript. It was acknowledged in plaintiff's brief. Thank you. And if you have any other questions, I'd be happy to answer them. Justice McCabe, no? No. Thank you, Justice. Thank you, counsel. Mr. Cosgrove, you may reply. I appreciate it. Thank you, Your Honor. Thank you. There was one important concession that was made during my colleague's oral argument that I'd like to start my argument in reference to. Counsel conceded that every count and every cause of action against Jang is presumed to have been proven. That was my own colleague's statement to Your Honor. It cannot be forgotten that the only way an advocate can be responsible, since it has no independent acts of misconduct, is vicariously. So if every single act of Jang is presumed to have happened and is presumed to have been proven by the evidence, as my colleague conceded to you folks today, how in the world could they then argue that the plaintiff was not the prevailing party? The only issue as the advocate was an issue of agency. Counsel, do you, I'm not asking you to concede, but isn't it reasonable for the jury to conclude, or any person to conclude, after someone takes their costume off, that they're not who we thought they were? So as soon as plaintiff shows up at the actual office and not the hospital, certainly it was reasonable for the agency to be believed while they were at the hospital, particularly because she was a, I think she worked as a janitor, basically, a housekeeper. Exactly. Why couldn't the jury conclude the same thing? I know that your presumption is it's start to finish. The doc is liable for all of it. But what, yeah, I want to make sure I respond, and that's the question that some of my colleagues before me today have referenced. I like that comment. As it relates to if the first act of negligence starts in 2009, it is irrelevant to advocates' continued financial responsibility if they're not the principal from 2010 to 2014, meaning if advocate's responsible in 2009, they're therefore responsible. Your question that you asked is slightly different than I think that, but I wanted to make sure I started that way. If a jury was to find in 2010 to 2014 that Dr. Jane was not the continued apparent agent of advocate, I actually think this is an issue of first impression. It's never been addressed before, ever in another case, of whether or not the concept of apparent agency can die or end. It's never been addressed. That's a brand-new issue. It's not one that's been briefed, actually. My argument to you folks would be that once somebody's an agent, they always are cloaked with that agency and continue it, that that continues. If you were the apparent agent from the start, you continue to still have the same responsibility moving forward if there's a continuous course of negligent conduct, meaning if the conduct that you're seeing the person for is the same conduct and it's continuing over and over and over. If you see somebody for one issue and then two years later you see them in an office on a different issue, I believe that's a different factual scenario, but not one that we're addressed with here. As it relates to Dr. Jane's testimony, my colleague again cited the issues instruction for the medical negligence count, and he read a number of different allegations. I think he said C and F. That, again, ignores the issue that we're bringing to Your Honor's attention. Regardless of whether you look at the medical negligence count and you only look at the informed consent count that counsel conceded today has been proven against Dr. Jane, of which started in 2009, that the defendant hospital is vicariously liable for, as the jury found, the conduct is that the plaintiff complains the neurologist failed to inform the plaintiff of the risks and alternatives to not treating or monitoring her glioma, which a reasonably careful, qualified neurologist would have disclosed under the same or similar circumstances. Counsel made a statement, and the statement was that Dr. Jane's self-serving testimony was that she complied with the standard of care. Saying in a sentence that I complied with the standard of care is not the same thing as saying that I told the patient the risks and alternatives of not treating or monitoring her glioma and counsel said, well, she testified to that and the jury agreed to it, and therefore we have some evidence. It is impossible to have happened because Dr. Jane's testimony is she never thought she had a glioma in the first place. How could someone, a doctor, who doesn't believe that a patient has a brain tumor, a glioma, tell the patient that you have something that I don't think you have and here are your risks and alternatives to dealing with it? You should see a neurosurgeon. You should have a biopsy. You should see a specialist. I don't treat glioma. If somebody really gets informed consent, they would tell them, if somebody really got informed consent as they're entitled to by law, they would tell them this is the disease, these are the people you need to see, and this is what you should do. Dr. Jane's testimony is I thought it was a scar, and I never thought you had a tumor, so of course she didn't tell the patient that she had this disease process, that she needed a bunch of other care from other specialists. Otherwise she would have went. We know that because the second she was told, she was in a neurosurgeon's office within days who also testified at the trial after she died. My time is up. I don't know if anybody has any other questions. I'd love to talk about this forever. Justice McVeigh, do you have any questions? No, I have no questions. Thank you. The lunch is waiting. I think we are finished here. I appreciate it. Thank you for the opportunity to be here. This is a beautiful court. Thank you, counsel. Well, thank you, counsel, both, for your fine arguments in this matter this morning. It will be taken under advisement. The written disposition shall be forthcoming. The court will now stand in recess until 1.15.